IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT A. BROWN,

                                          Plaintiff,

  v.                                                                        OPINION & ORDER

LUCAS WOGERNESE,                                        16-cv-34-jdp

                                          Defendant.

---

      Pro se plaintiff Scott Brown, a prisoner at the Columbia Correctional Institution (CCI), asserts an Eighth Amendment claim against defendant Lucas Wogernese, one of Brown's former prison guards. Brown contends that Wogernese was deliberately indifferent toward Brown's serious medical condition because Wogernese failed to place him in protective restraints despite Brown's threats of self-harm.

      Brown moves for the court's assistance in recruiting counsel. I will deny that motion. Both sides move for summary judgment. I will deny Brown's motion and grant Wogernese's because no reasonable jury could find that Wogernese was deliberately indifferent to Brown's risk.

UNDISPUTED FACTS

      In January 2015, the prison officials at CCI placed Brown on "one-on-one constant direct observation" status after Brown had threatened to harm himself. Dkt. 79, ¶ 6. This meant that, under the prison's policy, at least one correctional officer had to watch Brown at all times and record Brown's behavior every five minutes. Brown could have in his cell only

bare necessities such as clothing, a mattress, and toiletries. Constant direct observation status is a measure reserved for inmates at risk of imminent suicidal behavior.

In the morning of January 22, 2015, Brown attempted to harm himself in his cell. The parties dispute how he carried out his attempt. According to the prison guard assigned to observe Brown that morning, he saw Brown scratching his arm with his fingernails and picking at a scab, which was from a superficial injury that Brown had inflicted on himself during a prior self-harm incident. Brown, on the other hand, states that he was cutting himself with an inhaler, not his fingernails. He states that he was not allowed to have an inhaler but managed to keep this prohibited item in his cell, presumably by hiding it from the guards. The guard reported Brown's behavior to his supervisor, but the prison officials determined that the injury was only superficial, and they took no measure other than maintaining the constant observation of Brown's behavior.

Wogernese arrived at Brown's cell later to check on Brown. The parties agree that, when Wogernese arrived at Brown's cell, Brown had stopped scratching (or cutting) himself. Dkt. 79, ¶ 31. They also agree that Brown had smeared his own blood on his cell door and that Wogernese saw the blood. The parties dispute how much blood was smeared. Wogernese says the smeared blood was about the size of a quarter. Brown says it was more than a few drops and that it was "quite a bit of blood." *Id*. ¶ 31. But Brown does not dispute that he had only a superficial injury and that Wogernese did not see Brown attempting to hurt himself. *Id*. ¶¶ 25, 31-32. The parties also agree that Brown had a history of causing himself injuries and smearing blood on his cell door.

Brown told Wogernese that he would continue to hurt himself until he hit a vein and asked Wogernese to place him in protective restraints. But under the Department of

2

Corrections' policy, the prison staff members cannot place the inmates in protective restraints unless less restrictive measures would be ineffective. *Id.*, ¶¶ 36-37.

According to Wogernese, he exercised his judgment to determine that placing Brown in protective restraints was not necessary. Wogernese states that he made this decision because Brown had stopped scratching his arm and because Wogernese saw only a limited amount of blood along with a minor injury that was unlikely to lead to a significant bodily harm. He also states that he thought no additional measure was necessary because Brown was already on constant observation status. He left Brown's cell without implementing additional measures.

Brown resumed attempting to harm himself after Wogernese left. Brown covered the opening of his cell door and remained out of sight of the correctional officer assigned to observe him. It is unclear exactly how long he remained out of sight, but the correctional officer discovered that Brown had harmed himself further and took him to a physician and eventually to the psychological services. Dkt. 65, ¶¶ 13-21. The physician who examined Brown states that his cut was two to three centimeters long and "was through all skin layers into fat, but not exposing and therefore not injuring, deeper, more vital structures, such as muscles, tendons, and major blood vessels." *Id.* ¶¶ 13-14. Brown's wound was sutured to aid healing. The physician states that "Brown has an extensive history of self-injury, most of which are not serious, and none of which have been life-threatening[,]" *Id.* ¶ 21, which I take to mean that at least some of the injuries were serious. Brown commenced this case about a year after the incident, in January 2016.

ANALYSIS

A. Motion for counsel

Brown moves for the court's assistance in recruiting counsel. Litigants in civil cases do not have a constitutional right to counsel, and the court has the discretion to determine whether assistance in recruiting counsel is appropriate. *See* 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007) (en banc). Before assisting in recruiting counsel, this court generally requires a pro se litigant to satisfy two requirements. First, the pro se litigant must show that he has made reasonable efforts to recruit counsel on his own. *See Jackson v. Cty. of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992) ("[T]he district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts"). Generally, this court requires that the pro se litigant provide the names and addresses of at least three attorneys who declined to represent him.

Second, once the pro se litigant has shown that he made some reasonable attempt to recruit counsel, the court "must examine whether the difficulty of the case—factually and legally—exceeds" his competence to litigate his claims. *Perez v. Fenoglio*, 792 F.3d 768, 784 (7th Cir. 2015) (internal citation and quotation marks omitted). Assessing the litigant's competence is a "practical" inquiry, *Santiago v. Walls*, 599 F.3d 749, 762 (7th Cir. 2010), and no fixed requirement exists, but courts generally consider the litigant's "literacy, communication skills, educational level, and litigation experience" in light of the complexities of the case. *Pruitt*, 503 F.3d at 655.

Here, Brown has shown that he attempted to recruit counsel on his own, as he established in his previous motion for counsel. Dkt. 49-1 and Dkt. 53, at 2. But Brown's case

does not satisfy the second requirement. Wogernese conceded that Brown had a serious medical condition of being suicidal, so Brown does not need to obtain an expert witness. Brown also had a simple task: explain what happened to him and what Wogernese did or did not do. Brown has done a capable job of presenting his own evidence and responding to Wogernese's evidence and showing where facts are disputed. The complexity of the case does not outstretch Brown's ability to litigate it.

**B. Motion for summary judgment**

The familiar standards govern the parties' motions for summary judgment. The movant must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences from the facts in the record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). For each summary judgment motion, the court "look[s] to the burden of proof that each party would bear on an issue of trial" and "require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citation omitted).

A deliberate indifference claim under the Eighth Amendment "has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). As for the first element, acts of self-harm can pose a serious risk for purposes of the Eighth Amendment, *id.*, and "prison officials have an obligation to intervene when they know a prisoner suffers from self-

destructive tendencies," *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012). Wogernese does not dispute that Brown's tendency to harm himself was a "serious medical condition." Dkt. 61, at 12. Thus, the only remaining issue is the second element.

As for the second element, the plaintiff must demonstrate that the defendant acted with deliberate indifference. In the context of a prisoner's self-harm or threats of self-harm, deliberate indifference means that the correctional officer: (1) subjectively knew that the prisoner was at a substantial risk of harming himself; and (2) intentionally disregarded that risk. *Cf. Collins*, 462 F.3d at 761 (discussing deliberate indifference in the context of suicide or attempted suicide). An allegation that the defendant "should have been aware" is not enough; the defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Novack ex rel. Turbin v. Cty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (citation omitted). The correctional officer's "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment . . . ." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). The defendant can prevail by showing, for example, that he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844.

The defendant's response to the risk is also important. As the Supreme Court has explained, the defendant "who actually knew of a substantial risk" can still be "free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* This is so because the Eighth Amendment requires "reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in

6

safe custody under humane conditions." *Id.* The defendant who acts "reasonably" to ensure the inmate's safety cannot be liable under the Eighth Amendment. *Id*.

Here, no reasonable jury could find that Wogernese was deliberately indifferent to Brown's risk that he posed to himself. There is no doubt that Brown faced some risk of harming himself; that is why he was on constant observation status in the first place. But it is undisputed that, when Wogernese arrived at Brown's cell, Brown had stopped scratching his arm (either with his fingernails or with an inhaler) and that Brown had caused only a superficial injury. Not only that, the prison officials had already implemented drastic measures to ensure Brown's safety. Brown had at least one correctional officer continuously observing just him at all times, and the correctional officers went so far as noting Brown's behaviors at five to fifteen minutes intervals. Dkt. 64-1. The only reasonable inference the jury could draw is that Wogernese was not deliberately indifferent.

Brown contends that, aside from the extensive measures already implemented, Wogernese should have done even more, by taking a particular action requested by Brown, namely placing him in protective restraints. But he agrees that, under the prison policy, Wogernese could not resort to protective restraints unless the less restrictive means were ineffective. Dkt. 79, ¶ 36. The Eighth Amendment also does not "require perfection" but instead requires Brown to present evidence of "something approaching a total unconcern" for the inmate's safety, which Brown does not offer. *Rosario v. Brawn*, 670 F.3d 816, 822 (7th Cir. 2012) (citation omitted). Under these circumstances, Brown cannot prove that Wogernese was deliberately indifferent to a substantial risk merely because Wogernese did not use the severely restrictive measures that Brown requested.

7

In retrospect, putting Brown in restraints might have prevented him from gouging himself to the point of needing stitches. And perhaps there were other measures that might have helped Brown stop his self-harm, such as medication, distraction, or some other therapy. But the Constitution does not require the best possible outcome, nor is it the standard to which a prison system should aspire. The Constitution provides a minimum standard, which prohibits correctional officers from ignoring those risks of which they are aware. And based on the undisputed facts of this case, no reasonable jury could find that Wogernese was deliberately indifferent to Brown's risk of self-harm. The court will grant Wogernese's motion for summary judgment and deny Brown's motion.

## ORDER

IT IS ORDERED that:

1. Plaintiff Scott Brown's motion for the court's assistance in recruiting counsel, Dkt. 73, is DENIED.

2. Plaintiff's motion for summary judgment, Dkt. 35, is DENIED.

3. Defendant Lucas Wogernese's motion for summary judgment, Dkt. 60, is GRANTED.

4. The clerk of court is directed to enter judgment for defendant and close this case.

Entered January 27, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge